UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHALID FAWZI ZAKZOUK,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MOISES BECERRA, et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-06254 (RFL)<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order, Dkt. No. 2, which was filed with a Petition for Writ of Habeas Corpus against Respondents Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office Moises Becerra, Acting Director of the United States Immigration and Customs Enforcement Todd Lyons, Secretary of the United States Department of Homeland Security Kristi Noem, and Attorney General of the United States Pam Bondi.  Petitioner-Plaintiff seeks an order temporarily enjoining Defendant-Respondents from re-detaining him until such time as he has had an opportunity to challenge his re-detention before a neutral decisionmaker and there is reasonable likelihood of his removal.  Petitioner-Plaintiff states that he was released from immigration custody over seventeen years ago, but that there is now a substantial and immediate risk that he will be re-detained at an in-person Immigration and Customs Enforcement ("ICE") check-in appointment on July 28, 2025.  *Id.*

For the following reasons, the Court **GRANTS** Petitioner's *Ex Parte* Motion for Temporary Restraining Order.

**I.   BACKGROUND**

Petitioner-Plaintiff Zakzouk makes the following allegations via counsel, who executed a

1

verification of the habeas petition on his behalf. (Dkt. No. 1 at 36.) Petitioner-Plaintiff is a stateless Palestinian. He has lived in the United States since June 1, 1988, when he entered the county on an F-1 student visa. At the time, he traveled with an Egyptian Refugee Travel Document. On March 31, 1998, Petitioner-Plaintiff filed an application for asylum, seeking protection from his country of birth and last place of residence, Saudi Arabia.

Petitioner-Plaintiff has been detained by DHS two times previously. On January 24, 2000, an Immigration Judge ordered Petitioner-Plaintiff to be removed, presumably to Saudi Arabia. After Petitioner-Plaintiff was ordered removed, he was detained by ICE for approximately three months. However, it was determined that Petitioner-Plaintiff could not be removed to any country because he is not a citizen of Saudi Arabia, which determines citizenship by *jus sanguinis* (right of blood), and he has no right to return there. As a result, ICE released Petitioner-Plaintiff on his own recognizance and placed him on an Order of Supervision ("OSUP").

In late 2007, Petitioner-Plaintiff was again detained by ICE in San Francisco. Upon his release on January 10, 2008, ICE again confirmed that as a stateless Palestinian with no right to return to any country, Petitioner-Plaintiff's removal was not reasonably foreseeable. He was again placed on an OSUP, which required Petitioner-Plaintiff to attend regular check-in appointments and permitted him to apply for work authorization.

Petitioner-Plaintiff has remained on release for the last seventeen years, since 2008, without incident. He has been the primary caretaker for his fifteen year-old daughter, who is a United States citizen. Petitioner-Plaintiff's daughter has been diagnosed with a severe depressive disorder and anxiety, and she relies on her father, who is her primary caretaker, for emotional support. Petitioner-Plaintiff is a homemaker, and is responsible for managing his household, including preparing all meals, and supporting his U.S. citizen spouse's career.

Petitioner-Plaintiff has complied with all the requirements of his OSUP. He has never missed a required check-in appointment, and ICE has not attempted to re-detain him over the last seventeen years. On July 17, 2025, at his last regularly scheduled check-in appointment,

Petitioner-Plaintiff was told that he needed to return the following week to apply for travel documents to Saudi Arabia and Jordan—neither of which are countries to which Petitioner-Plaintiff holds citizenship. DHS recently adopted a policy under which it may detain and remove non-citizens with final removal orders to countries not listed on the removal order "without the need for further procedures," so long as the Department of State has received what it has determined to be credible assurances that those removed from the United States will not be persecuted or tortured in those countries. (Dkt. No. 1-1.) Although Petitioner-Plaintiff informed the ICE officer that he has no right to return to either country because he is stateless, the officer told Petitioner-Plaintiff that "things are different now." Petitioner-Plaintiff was initially required to return on July 21, 2025, but was given an extension until July 28, 2025.

Based on DHS's stated policy and news reports of non-citizens being detained at check-ins, Petitioner-Plaintiff feared that he would be detained without further notice at his check-in on Monday, July 28, 2025, and promptly obtained counsel. Petitioner-Plaintiff's counsel emailed ICE San Francisco on July 24, 2025, to seek clarification for the purpose of the July 28, 2025 appointment, and informed ICE that Petitioner-Plaintiff is a stateless Palestinian who was put on an OSUP because ICE was unable to remove him. Petitioner-Plaintiff's counsel states that no response was received. Petitioner-Plaintiff filed this emergency motion on Saturday, July 26, 2025.

## II.   LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary

injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's attorney has set out specific facts showing that "immediate and irreparable injury, loss, or damage" may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the United States Attorney's Office for the Northern District of California on July 25, 2025 at 10:56 a.m. regarding the forthcoming Habeas Petition and Motion for Temporary Restraining Order.

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678,

690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) (entering a preliminary injunction because "this Court joins other courts of this district facing facts similar to the present case and finds Petitioner-Plaintiff raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (same).

      For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—support requiring a pre-detention hearing for Petitioner-Plaintiff.  After seventeen years, Petitioner-Plaintiff has a substantial private interest in remaining out of custody on bond, which "enables him to do a wide range of things open to persons" who are free from custody, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against.  Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, and neither of those bases appears to be applicable here.  Also, the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements and there has been no recent change in his circumstances.  *See Jorge*

*M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970; *Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 18110076 (N.D. Cal. June 30, 2025).

Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. In combination with DHS's new policy, the ICE officer's comments in response to questions about Petitioner-Plaintiff's newly scheduled check-in that "things are different now" and that he would be required to submit travel documents for Saudi Arabia or Jordan indicate an imminent risk that Petitioner-Plaintiff will be re-detained to facilitate a removal to one of those countries at his check-in on Monday morning. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here. As previously described, Petitioner-Plaintiff is the primary caretaker for his family. His daughter is uniquely dependent on Petitioner-Plaintiff for support, as she suffers with severe depressive disorder and anxiety. In addition, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff might be abruptly taken into ICE

6

custody, subjecting him and his family to significant hardship.  Yet the comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining Petitioner, should the government ultimately show that detention is intended and warranted.  There appears to be no urgent reason why Petitioner needs to be re-detained.  Nor does there appear to be any indication that Petitioner will fail to appear as required after consistently doing so for over seventeen years or that he will pose any kind of danger to the community.  Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Accordingly, the Court hereby **GRANTS** Petitioner's Motion for a Temporary Restraining Order.  Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

### IV.   ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.  Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until **August 6, 2025, at 5:00 p.m.**  The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order,

and this Order **SHALL** be served on Respondents such that they receive actual notice as soon as possible. Petitioner-Plaintiff shall file proof of service or a status report on service by no later than **July 29, 2025**.

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **August 6, 2025, at 1:00 p.m.** why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than **July 30, 2025 at noon**. Any reply shall be filed by **August 1, 2025**.

**IT IS SO ORDERED.**

Dated: July 26, 2025 at 2:06 p.m.

RITA F. LIN
United States District Judge